IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

RICKY BERNARD MCCOY, :
   **Plaintiff,** :
       :
  **v.**     :  **Case No: 5:15-cv-00175 (MTT)**
       :
BRUCE CHATMAN, *et al.*, :
    **Defendants.** :

## REPORT AND RECOMMENDATION

  Before the Court are three Motions to Dismiss filed by Defendants Logan, McMillian, Powell, Chatman, McCloud, Bishop, and Dean. Docs. 14, 30, 50; 64.[1] For the following reasons, it is **RECOMMENDED** that Defendants' Motions to Dismiss (Docs. 14, 30, 50; 64) be **GRANTED in PART**, such that Plaintiff's requests for compensatory and punitive damages be **DISMISSED**, and **DENIED in PART**, such that Plaintiff's claims for violations of his due process and Eighth Amendment rights go forward for factual development. It is **FURTHER RECOMMENDED** that Plaintiff's Motion to Dismiss (Doc. 56) be **DENIED**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

  At the outset, it should be noted that the procedural background of this case has been complicated by the fact that Plaintiff filed numerous supplemental complaints, each more complicated than the last, making it difficult to distill his claims. Plaintiff filed his original complaint on May 19, 2015. Doc. 1. Plaintiff's original complaint alleged a Due Process violation

---

[1] Plaintiff originally alleged that two "John Doe" Defendants were also responsible for some of his injuries and were appropriate parties to his claim. The Court was previously unable to serve these Defendants due to a lack of information regarding their names and whereabouts. On April 28, 2016, the Court directed Plaintiff to provide the Court with the name or current mailing address concerning the Defendant John and/or Jane Doe, so that the Court may continue its efforts to effectuate service. Doc. 54. Plaintiff responded and the United States Marshals Service is currently in the process of serving the two Defendants. See Doc. 71. The Defendants' responsive pleadings will be addressed separately, once they are filed.

based on a protected liberty interest in Plaintiff's continued confinement in the Special Management Unit at the Georgia Diagnostic and Classification Prison (GDCP). See e.g. Doc. 1.

After screening Plaintiff's complaint (Doc. 1) pursuant to 28 U.S.C. § 1915A, the Court ordered the due process claim against Defendants James McMillian, William Powell, and Rufus Logan to go forward, and recommended that all other parties and claims be dismissed.   Doc. 7. The Court summarized Plaintiff's allegations as follows:

> The present action arises out of Plaintiff's confinement at Hays State Prison, Georgia State Prison, and the Georgia Diagnostic and Classification Prison. The Complaint alleges that Plaintiff has been confined in administrative segregation for a number of years and denied due process, with respect to this placement, in each of these facilities.   Plaintiff was first confined in administrative segregation at HSP in August of 2011 without notice or reason. Shortly thereafter, Plaintiff was transferred to administrative segregation at GSP where Defendants Warden Chatman, Deputy Warden Fowler, and Deputy Warden Paul allegedly failed to provide Plaintiff with any hearing or opportunity to respond from September 2011 to June 2013. Plaintiff was then transferred to GDCP on June 21, 2013. There, Defendants Deputy Warden Powell and Unit Manager McMillian did apparently hold a classification hearing for Plaintiff sometime in July of 2013, but Plaintiff was still not given any reason why he was placed in segregation. Plaintiff alleges that subsequent hearings conducted at GDCP by Defendants McMillian, Powell, and Unit Manager Logan were "meaningless, sham, and fraudulent" and that he was never given an opportunity to present evidence in his defense. Plaintiff claims that the GDCP defendants likewise failed to support their findings with evidence and that there decision to keep him in in segregation was arbitrary. Plaintiff appealed these decisions but never received a response from either Warden Chatman or the Superintendent, Rodney McCloud. Plaintiff has thus been confined at GDCP for two years under conditions where he is denied recreation and access to programs, subjected to sensory deprivation in isolation, given only restricted access to the law library, and deprived of all personal property.

See Order and Report and Recommendation, Doc. 7, pp. 3-4. Thereafter, Plaintiff amended his complaint and objected to the Recommendation. Doc. 10; Doc. 11.

On September 1, 2015, Defendants Logan, McMillian, and Powell filed a Motion to Dismiss for Failure to State a Claim. Doc. 14. Plaintiff responded to the Defendants' Motion. Doc. 19. On November 3, 2015, the Court referred the matter back to the Magistrate Judge to consider additional allegations Plaintiff raised in his amended complaint and objection to the Recommendation. Doc. 21.

On December 2, 2015, an amended Recommendation considered additional allegations in Plaintiff's amended complaint (and in the objection) and ordered Plaintiff's due process claims arising out of the Plaintiff's confinement at GDCP to go forward against Defendants Bruce Chatman, Rodney McCloud, Betty Dean, and Jane/John Doe. Doc. 23. The amended Recommendation was adopted by the District Court, and Plaintiff's remaining claims against Defendants Bruce Chatman, Edward Fowler, and Deputy Warden Paul arising out of the Plaintiff's confinement at Georgia State Prison and Hancock State Prison were dismissed. The Court also ordered service on Defendant Bishop, noting her role in the decisions related to the Plaintiff's continued confinement in the special management unit at GDCP and a policy (or widespread practice) of arbitrarily denying classification appeals. See Doc. 40.

Meanwhile, Defendants Chatman and McCloud filed their Motion to Dismiss on January 26, 2016, incorporating the arguments raised in the September 1, 2015 Motion to Dismiss. Doc. 30. Plaintiff filed his response on February 19, 2016, and filed a Second Motion to Amend his Complaint on February 22, 2016. Doc. 38; Doc. 39. Defendants responded to Plaintiff's Motion to Amend. Doc. 44. On March 24, 2016, Plaintiff filed his third Motion to Amend, noting that the filing was simply a resubmission of his previous Motion to Amend due to "an error" made by the

Clerk's Office. Doc. 47, p. 1. Following service, Defendants Bishop and Dean filed their Motion to Dismiss, joining the other above-named Defendants. Doc. 50. The Court directed Plaintiff to respond to that Motion, and he complied. Docs. 51; 65.

On April 28, 2016, the Court granted Plaintiff's Motion to Amend, and allowed him to proceed with his Eighth Amendment claims regarding his conditions of confinement in GDCP SMU against Defendants McMillian, Powell, Logan, Chatman, McCloud, Dean, and Bishop. Doc. 54; see also *Bettencourt v. Owens*, 542 F.App'x. 730, 735 (11th Cir. 2013) (recognizing a "well-established rule" in the Eleventh Circuit that on motion to dismiss a court must "afford a plaintiff an opportunity to amend his pro se complaint before dismissing with prejudice unless an amendment would be futile or the plaintiff expresses a desire not to amend") (citing *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991)). The aforementioned Defendants were ordered to file an answer or other response as provided in the Federal Rules of Civil Procedure. *Id.* The Clerk of Court was also directed to refile Plaintiff's proposed amended complaint as the operative complaint in this case. See Doc. 55. The Defendants filed their Motion to Dismiss Plaintiff's Eighth Amendment claim on May 18, 2016, pursuant to Rule 12(b)(6). Doc. 64. The Motions are now ripe for review.

## II.   PLAINTIFF'S CLAIMS ARISING FROM HIS CONFINEMENT AT GDCP

In their four separate Motions to Dismiss, Defendants argue that: (1) Plaintiff fails to state a claim upon which relief can be granted, (2) they enjoy qualified immunity from suit, (3) Plaintiff's claims for monetary relief are barred by the PLRA;[2] and (4) Plaintiff is not entitled to

---

[2] Defendants' originally argued in their September 1, 2015, Motion to Dismiss that Plaintiff's claims for monetary and nominal damages were completely barred by the PLRA, because he had not alleged a physical injury. See Doc. 14, pp. 10-17. Yet just two days later, on September 3, 2015, the Eleventh Circuit clarified that while "we have never had the opportunity in a published opinion to settle the availability of nominal damages under the PLRA," *Brooks v. Warden*, 800 F.3d 1295, 1307-08 (11th Cir. 2015), "[w]e do today, and we hold that nothing in § 1997e(e) prevents a prisoner from recovering nominal damages for a constitutional violation without a showing of physical injury." *Id.* Defendants

equitable relief. See e.g. Docs. 14, 30, 50; 64.

**A.      Plaintiff's burden under Federal Rule of Civil Procedure 12(b)(6)**

Plaintiff's complaint is subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The instant *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotations omitted).

Plaintiff presents two constitutional claims in this case: a Fourteenth Amendment due process claim and an Eighth Amendment conditions of confinement claim. When read as a whole, the allegations in Plaintiff's original and amended complaints are sufficient to state a claim that Plaintiff was deprived of a protected liberty interest without due process of law and that the conditions of the GDCP SMU violate the Eighth Amendment. The facts are also sufficient to show that each of the individually-named defendants participated in the violation of his constitutional rights.

**B.  Plaintiff's complaint states a Procedural Due Process Claim.**

To state a procedural due process claim, a prisoner first "must have a liberty interest created by the United States Constitution or by a state." *Walker v. Florida Parole Com'n*, 299 F.

---

recognized the *Brooks* decision in their most recent Motion to Dismiss, and now argue that "Plaintiff is entitled, at most, to nominal damages." See Doc. 64-1, p. 9.

App'x 900, 901 (11th Cir. 2008) (citing *Monroe v. Thigpin*, 932 F.2d 1437, 1441 (11th Cir. 1991). The Supreme Court has identified two methods in which a prisoner's liberty interests may be deprived in relation to his confinement in a state prison. See *Sandin v. Connor*, 515 U.S. 472 (1995). The first occurs when the state deprives him of certain benefits conferred on other prisoners, the second occurs when his confinement is of such a nature that he is held in excess of his court imposed sentence. *Wallace v. Hamrick*, 229 F. App'x 827, 830 (11th Cir. 2007).

Plaintiff contends that inmates housed in general population within the Georgia Department of Corrections have many benefits incident to ordinary prison life that Plaintiff is being denied while he is housed in the Special Management Unit at GCDP. Plaintiff alleges that this differential treatment both rises to the level of being an atypical and significant hardship and is punitive in nature.

Plaintiff's placement in administrative segregation does not, by itself, give rise to a liberty interest: "the transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Al-Amin, v. Donald*, 165 F. App'x 733, 738 (11th Cir. 2006) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). For a liberty interest to be triggered by a deprivation of in-prison benefits, the deprivation must also "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Wallace*, 229 F. App'x at 830. (quoting *Sandin*, 515 U.S. at 484). "The touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of the regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (quoting *Sandin*, 515 U.S. at 484)

Plaintiff alleges that inmates housed in the SMU are subject to treatment so restricted and

severe as to impose an atypical and significant hardship on him and his fellow inmates. Plaintiff claims that, upon entering the SMU, all of his property was confiscated without his committing an infraction. Doc. 55, p. 8. He states that he and other SMU inmates are placed in cells with completely obscured windows for twenty-four hours a day and held in isolation except for two days a week in which they are allowed outside for two and half hours. *Id*; Doc. 1, p. 13. When SMU inmates are allowed outside, they are still held in isolation in "barren cages." The cell measures eight feet by ten feet, with about "32 square feet of unencumbered floor space." Doc. 55, p. 8. The windows are permanently sealed and occluded by metal boxes, and neither the panic button nor the electric outlet and light switch are operational. Doc. 55, p. 8.

Inmates are allowed to shower three times a week. Doc. 10, p. 8. Inmates receive sub-standard food and medical care, are unable to attend religious activities and services, and are denied access to classes and education opportunities. Doc. 55, p. 10. Inmates are not allowed to "move about the prison," freely communicate with their families with "unlimited phone calls and contact visits," or physically visit the law library. *Id*. Inmates in SMU are also forced to "make a choice between divulging highly personal medical and mental health details that subject [them] to abuse and exploitation in order to receive care, or to forego requesting care in order to preserve confidentiality and personal safety." *Id*. at 9.

In contrast, Plaintiff states that the general prison population has extensive liberty within the confines of the prison. Plaintiff alleges that general population inmates have very broad access to shows, recreation, gym use, and even sports activity. They enjoy out of cell time for eighteen and a half hours a day during weekdays and twenty hours on the weekends, and are eligible for "at least six hours of recreation a day." Doc. 10, p. 7. They are allowed access to the law library, rehabilitative courses, and educational opportunities. General population prisoners enjoy better

quality food at a cafeteria, the ability to shower "at least twice a day," and basic privacy in receiving medical care. Doc. 55, p. 10-11; Doc. 10, p. 8.

Taking the conditions of general population inmates as a baseline from which to measure the ordinary incidents of prison life, the conditions allegedly imposed upon Plaintiff make out plausible claim of atypical and significant hardship. While Plaintiff's conditions are typical of segregated confinement,[3] the fact that (1) day-to-day human interaction, including cell-to-cell communication, is restricted, (2) the duration of the confinement has lasted years apparently contrary to GDC procedure that graduates inmates into less severe prison environments, and (3) placement disqualifies Plaintiff for parole consideration,[4] successfully makes out a claim of atypical and significant hardship. See *Wilkinson,* 545 U.S. 209; *Turner v. Upton*, 2013 WL 4852689 (M.D. Ga. 2013) (denying due process liberty interest claim based on confinement in SMU where Plaintiff was allowed to graduate to less restrictive wing and Plaintiff was not parole eligible); *Sandin*, 515 U.S. 472 (placement in administrative segregation did not create liberty interest where the general population was "locked down" 12 to 16 hours a day and Plaintiff was only there for thirty days).

Defendants assert that the conditions as alleged do not rise to the level necessary to

---

[3] In *Wilkinson*, the Supreme Court described the Ohio State Penitentiary Supermax facility as follows, "in the OSP every aspect of an inmate's life is controlled and monitored. Incarceration there is synonymous with extreme isolation. Opportunities for visitation are rare and always conducted through glass walls. Inmates are deprived of almost any environmental or sensory stimuli and of almost all human contact. "[P]lacement at OSP is indefinite and, after the initial 30-day review, is reviewed just annually. Second is that placement disqualifies an otherwise eligible inmate for parole consideration. While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context." *Wilkinson,* 545 U.S. at 224 (citations omitted). Plaintiff's allegations regarding his confinement in the SMU do not significantly differ.

[4] Plaintiff also alleges that his confinement is of such a nature that he is held in excess of his court imposed sentence. Specifically, Plaintiff states that his placement in SMU precludes him from completing mandatory classes required by the parole board. Doc. 55, p. 7. Thus, Plaintiff's "eligibility" for parole "diminishes" each day he is confined in SMU. *Id.* Unfortunately for Plaintiff, the Constitution does "not confer a liberty interest in parole." *Walker*, 299 F. App'x at 902 (citing *Monroe*, 932 F.2d at 1441). State statutes and regulations may create such a liberty interest in parole if the state parole system "creates a legitimate expectation of parole." *Heard v. Georgia State Bd. Of Pardons and Paroles*, 222 F. App'x. 838, 840 (11th Cir. 2007). "Georgia's parole system [does] not create such an expectation so that Georgia inmates have no liberty interest in parole." *Id.* (internal citations omitted).

constitute atypical or significant hardship. Defendants rely on several Eleventh Circuit cases to argue that the amount of time Plaintiff has spent in the SMU combined with the level of restriction imposed does not meet the *Sandin* standard. These cases are distinguishable from the factual restrictions Plaintiff has alleged and the fact that Plaintiff asserts he is being held *indefinitely*. While the Eleventh Circuit has rejected a liberty interest claim where Plaintiff was held in administrative segregation for four years and "the conditions of [] confinement were generally equivalent to general prison population conditions," see *Morefield v. Smith*, 404 F. App'x 443 (11th Cir. 2010), and where "inmates in administrative segregation 'are treated similarly' to those in general population," and held for three years, *Al-Amin*, 165 F. App'x 733, Plaintiff has alleged a wider gap between the conditions of confinement in general population and in SMU than is described in either *Morefield* or *Al-Amin*. Construed in the light most favorable to the Plaintiff, the facts alleged in Plaintiff's complaints sufficiently set forth a protected liberty interest. See *Lopez v. Target Corp.*, 676 F.3d 1230, 1232 (11th Cir. 2012).

Because Plaintiff has plausibly alleged that he is deprived certain benefits conferred on other prisoners, the question turns to whether he was afforded the procedures due to him. An initial administrative hearing in which the inmate is given notice and an opportunity to rebut, combined with periodic reviews of status every thirty (30) days, is sufficient due process when confining an inmate in segregation. See *Morefield*, 404 F. App'x at 446.  Likewise, a special management hearing where Plaintiff was given an explanation and opportunity to express his views combined with an administrative hearing every thirty (30) days, with right to appeal, is sufficient due process. See *Al-Amin*, 165 F. App'x at 737. In this case, Plaintiff alleges that he was not afforded a hearing on his classification in administrative segregation until July 2013, and that since then he has received regular hearings but has not been able to express his views. Plaintiff further alleges

that these reviews are pretextual, and that while he has attempted to appeal, the Defendants have "refused to answer or acknowledge [his] appeal." Doc. 55, p. 2.

Plaintiff alleges that he was originally placed in the SMU without notice or reason. Doc. 55, p. 1. Plaintiff contends that his continued confinement indicates that the ninety day review procedure is not a meaningful remedy. *Id.* at 2. Plaintiff states that once he was transferred to GDCP, Defendants Deputy Warden Powell and Unit Manager McMillian did apparently hold a classification hearing for Plaintiff sometime in July of 2013, but did not give Plaintiff any explanation for his continued segregation. Doc. 1, p. 11; Doc. 55, p. 2. Plaintiff alleges that subsequent hearings conducted at GDCP by Defendants McMillian, Powell, and Unit Manager Logan were "meaningless, sham, and fraudulent" and that he was never given an opportunity to present evidence in his defense. *Id.* Plaintiff claims that the other GDCP defendants likewise failed to support their findings with evidence and that their decision to keep him in in segregation was arbitrary. *Id.* He states that he has not violated "any law, criminal, civil, or institutional" that would meet the criteria to keep him in SMU. Doc. 1, p. 12 (citing GDOC SOP IIB09-0001; GDOC SOP IIB09-0004). Plaintiff appealed these decisions but never received a response from either Warden Chatman or the Superintendent, Rodney McCloud. *Id.*

The decision to deprive an inmate of a protected liberty interest must be based on "some evidence." *Superintendent, Massachusetts Correctional Institiution, Walpole v. Hill*, 472 U.S. 445 (1985) (where good time credits are protected liberty interest, a decision to revoke the credits must be supported by some evidence even when they are revoked by a disciplinary board). Therefore, "due process is not satisfied where the periodic reviews are a sham; the reviews must be meaningful and not simply perfunctory." *McClary v. Kelly*, 4 F. Supp. 2d 195 (W.D.N.Y. 1998); see also *Toevs v. Reid*, 685 F.3d 903, 912 (10th Cir. 2012) (citing *Hewitt*, 459 U.S. at 477) ("the

review must be meaningful; it cannot be a sham or a pretext"). Plaintiff's allegations are sufficient to establish a plausible claim that the periodic reviews provided were not meaningful and thus did not afford due process, and his claim should go forward for factual development.

Plaintiff further alleges that each Defendant knowingly kept him confined in the SMU in violation of due process. While Plaintiff's original complaint does not detail how each individual was specifically involved in the decision to keep him confined, Plaintiff has alleged that each of the following individuals were personally involved in the decision and actions which resulted in his continued confinement at the SMU: Superintendent Rodney McCloud, Deputy Warden of Security William Powell, and Deputy Warden Bishop, Warden Chatman, Defendant McMillian, and Defendant Dean. These allegations are sufficient to survive dismissal at the Rule 12(b)(6) stage.

**C.     Eighth Amendment Conditions of Confinement Claims**

Plaintiff's newly added Eighth Amendment claim arises out of his Due Process Claim. In his Second Amended Complaint, Plaintiff alleges that a variety of factors, in their totality, make the conditions of confinement in the SMU inhumane, and thus violate the Eighth Amendment. In addition to prolonged solitary confinement and lack of exercise, Plaintiff alleges that he has suffered from sleep deprivation, is kept in confined and unsanitary housing conditions, is deprived of natural light, and subjected to an unbearable stench. See Doc. 55, p. 9. These facts are specific and raise Eighth Amendment issues, and Plaintiff alleges that each Defendant is or was "legally responsible" for the operation of the SMU and welfare of inmates in his unit. Doc. 55, pp. 12-14. Plaintiff further alleges that despite receiving numerous complaints from him and other SMU inmates about the conditions in SMU, all the Defendants have refused to take corrective action. Doc. 55, p. 13. In response, Defendants argue that Plaintiff has failed to state an Eighth Amendment

claim because the conditions he alleges do not rise to the level of "cruel and unusual," but are allegations of mere discomfort. See Doc. 64.

The Eighth Amendment protects against "cruel or unusual punishments." U.S. Const. amend. VIII. The "cruel and unusual punishments" standard applies to the conditions of a prisoner's confinement. *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). Challenges to conditions of confinement "require a two-prong showing; an objective showing of a deprivation or injury that is 'sufficiently serious' to constitute a denial of the 'minimal civilized measure of life's necessities' and a subjective showing that the official had a 'sufficiently culpable state of mind.'" *Evans v. St. Lucie County Jail*, 448 F. App'x 971, 973 (11th Cir. 2011). Restrictive and harsh conditions are part of the penalty criminal offenders pay, so a successful claim requires extreme deprivations of basic human needs or unreasonable risks to future health. *Id.*

Plaintiff states he is "forced to live in a modernized dungeon" in the Special Management Unit, where cells are eight feet by ten feet with about thirty-two square feet of unencumbered floor space. Doc. 55, p. 7. Sunlight is obstructed from view. Doc. 55, p. 7. Plaintiff states that neither the emergency medical panic button nor his light switch is operational. Doc. 55, p. 7. Plaintiff alleges he is in solitary confinement. Doc. 55, p. 8. He complains that the air is "saturated with the fumes of feces, urine, strong body odor, and vomit." Doc. 55, p. 8. The conditions in SMU "…are deplorable," where "food is exposed … [to] … mold mildew, and insects." Doc. 55, p. 9. Plaintiff further alleges that these conditions "are imposed as a sanction for minor" disciplinary infractions, and that his confinement is indefinite—"Plaintiff has been condemned to live in Georgia's isolation cells for years." Doc. 55, p. 10. He infers that the Defendants are aware of these conditions through "numerous communications … from outside organizations and entities … disciplinary appeals, grievances, and civil litigation." Doc. 55, p. 12. He summarizes, "Plaintiff's experience in SMU is

tortious." Doc. 55, p. 13.

Facts supporting the first element must be extreme and "pose an unreasonable risk of serious damage to [an inmate's] future health" or safety. *Helling v. McKinney*, 509 U.S. 25, 35 (1993). The Eighth Amendment thus guarantees that prisoners will not be "deprive[d] ... of the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347. Plaintiff's allegations, when considered individually, do not meet this standard.

Plaintiff broadly asserts that the SMU is "unsanitary," permeated with the aroma of human feces, urine, and vomit. The Eleventh Circuit has recently recognized that, "[e]xposure to human waste, like few other conditions of confinement, evokes both the health concerns emphasized in *Farmer* and the more general standards of dignity embodied in the eighth amendment." *Brooks v. Warden*, 2015 WL 5157339, at *7 (11th Cir. 2015) (quoting *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001)). "Allegations of unhygienic conditions, when combined with the jail's failure to provide detainees with a way to clean for themselves with running water or other supplies" may state a claim for relief. *Id*. (quoting *Budd v. Motley*, 711 F.3d 840 (7th Cir. 2013). Plaintiff does not claim or present evidence that he was exposed to any human waste, nor does he expound upon the "filthy" conditions of his cell in violation of the Eighth Amendment. See *Capers v. Hetzel*, 2012 WL 6632395 (M.D. Ala. 2012) (granting summary judgment where toilets were set to flush automatically every two hours); *Alfred v. Bryant*, 378 F. App'x 977 (11th Cir. 2010) (upholding District Court dismissing claim as frivolous where plaintiff alleged toilet did not completely flush its contents and overflowed several times and Plaintiff had to clean it with his bare hands); *Johnson v. Lewis*, 217 F.3d 726, 733 (9th Cir. 2000) ("we have no doubt that toilets can be unavailable for period of time without violating the Eighth Amendment"); *Scaff-Martinez v. Reese*, 2012 WL 6754889 (N.D. Ala. 2012) (finding no violation of clearly established law where

toilet flushing is controlled by guards, resulting in delays of up to two hours). Thus, his complaints of unsanitary conditions, without more, do not support an Eighth Amendment claim.

Similarly, Plaintiff's claims of exposure to mold and mildew, considered in isolation, do not rise to a level that would violate the Eighth Amendment. See *Jordan v. Franks*, 2010 WL 4007641, at *2 (S.D. Ga. Aug. 30, 2010) *report and recommendation adopted*, 2010 WL 4007637 (S.D. Ga. Oct. 12, 2010) ("It is well established that the mere exposure to mold, mildew, and odors does not amount to 'an excessive risk to inmate health or safety' under the Eighth Amendment.")(citing *Briggs v. Wall*, 2009 WL 4884529 at *2 (D.R.I. Dec.16, 2009); *Batiste v. Madison Parish Sheriff's Office*, 2007 WL 2263077 at *2–3 (W.D.La. June 22, 2007) (no constitutional claim where plaintiff was exposed to mold and mildew for eight months absent some showing that he suffered actual physical harm from the exposure); *Shrader v. White*, 761 F.2d 975, 983–87 (4th Cir.1985); see also *Cable v. Wa II*, 2010 WL 1486494 at *4 (D.R.I. Mar.18, 2010) (collecting cases showing that a general lack of facility cleanliness, without more, cannot state a present harm Eighth Amendment claim)).

Plaintiff's argument challenging the size of his cell, when considered alone, does not violate the Eight Amendment. Plaintiff states that his cell is eight by ten with thirty two square feet of open space. See Doc. 55, p. 7. The Eleventh Circuit has never directly addressed what amount of square footage amount violates the Eighth Amendment, but other courts have. See *Williams v. Edwards*, 547 F.2d 1206, 1215, n. 8 (5th Cir. 1977) (quoting *Gates v. Collier*, N.D.Miss., 1975, 390 F.Supp. 482, 486) ("We know from the undisputed evidence that generally accepted correctional standards require a minimum of 50 square feet of living area for every prison inmate."); see also *Rhodes v. Chapman*, 452 U.S. 337, 350 (1981) (recognizing that several studies on prison capacity recommend at least "50-55 square feet of living quarters"). Plaintiff's eighty

square feet of space, comparatively speaking, more than exceeds the generally accepted standards from other circuits, and does not support an Eighth Amendment claim.

Nor does Plaintiff's "punitive isolation" violate the Eighth Amendment, as "administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment." *Sheley v. Dugger*, 833 F.2d 1420, 1428–29 (11th Cir. 1987). When the duration is indefinite, however, a violation of the Eighth Amendment could be present. See *id.* at 1429 (noting that long terms of solitary confinement in close management administrative segregation raised serious constitutional questions in light of mental and physical deterioration alleged by inmate as well as contention that his confinement was punitive in nature); *Meriwether v. Faulkner*, 821 F.2d 408, 417 (7th Cir. 1987) (finding that dismissal of Eighth Amendment claims by an inmate facing prolonged, indefinite confinement in segregation "without ascertaining the actual conditions of [the inmate's] confinement and the existence of any feasible alternatives was premature).

Although a showing of unconstitutional conditions of confinement must clear a "high bar," Plaintiff has pleaded facts that show a denial of "the minimal civilized measure of life's necessities," and constitute an "unreasonable risk to his health." Plaintiff has alleged that he is forced to spend an indefinite amount of time in an unsanitary cell, where his food is exposed to harmful elements, and noxious fumes of human waste permeate the air. See *Wilson v. Seiter*, 501 U.S. 294, 298–300 (1991) (holding that some conditions of prison confinement may establish Eighth Amendment violation in combination when each would not do so alone); *Ivory v. Warden, Governor of Alabama*, 600 F. App'x 670, 677 (11th Cir. 2015) (analyzing an inmate's allegations of conditions of confinement "individually [and] in combination"). He states that these conditions have caused him to suffer insomnia, cardiovascular and genito-urinary problems, tremulousness, gastro-intestinal problems, deterioration of eyesight, heart palpitations, migraines, appetite loss,

weight loss, back and joint pain, dizziness, hypersensitivity to external stimuli, chronic depression, hallucinations, anxiety, nervousness, night terrors, panic attacks, paranoia, and claustrophobia. Doc. 55, p. 11. These alleged injuries, in combination with his seemingly indefinite solitary confinement, are sufficiently serious to constitute a denial of the minimal civilized measure of life's necessities. Furthermore, Plaintiff's allegations that the conditions are so obvious that the defendants had to have known about them is sufficient at this stage to show obvious risk and disregard of the conditions. See *Farmer*, 511 U.S. at 841–43 ("a prison official who was unaware of a substantial risk of harm to an inmate may nevertheless be held liable under the Eighth Amendment if the risk was obvious and a reasonable prison official would have noticed it"); *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) ("*pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys' and are liberally construed")( (quoting *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)). Thus, dismissal of Plaintiff's Eighth Amendment claim is inappropriate.

## III.   DEFENDANTS' DEFENSES AND PLAINTIFF'S REQUESTED RELIEF

Even if Plaintiff states a cognizable claim, Defendants argue that Plaintiff's complaint should be dismissed because they enjoy qualified immunity, or that Plaintiff's requests for monetary and injunctive relief should be dismissed.

### A.   Defendants are not entitled to dismissal based on the Defense of Qualified Immunity.

"Qualified immunity protects government officials performing discretionary functions from civil trial (and other burdens of litigation, including discovery) and from liability if their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146 (11th Cir. 1994) (en banc) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800 (1991)). The qualified immunity inquiry

involves a three-step process. *Vinyard v. Wilson*, 311 F.3d 1340 (11th Cir. 2002). At step one; the defendant must prove that he was acting within the scope of his discretionary authority. *Id*. If the defendant meets this burden, then at step two, the Court must determine whether the plaintiff suffered a constitutional violation. *Id*. Finally, if the facts prove the violation of a constitutional right, the third step requires an inquiry into whether the law with respect to that right was clearly established at the time of the alleged violation. *Id*.

The first inquiry of the qualified immunity analysis is unquestionably met; Defendants were acting within the scope of their discretionary functions as government employees with respect to all actions at issue in this case. Defendants act within their discretionary authority when their "actions were undertaken pursuant to the performance of their duties and within the scope of their authority." *Rich v. Dollar,* 841 F.2d 1558 (11th Cir. 1988). Determining whether a government employee was acting within discretionary authority focuses on whether that employee (1) was performing a legitimate job-related function (2) "through means that were within his power to utilize." *Holloman ex. rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1185, n. 17 (11th Cir. 1994)). This inquiry looks to the general nature of the defendant's actions to determine if the action would have "fallen within his legitimate job description" but for the alleged constitutional violation. *Id*. Specifically, the Defendants in this case are all employed by the Georgia Department of Corrections, and the activities forming the basis of Plaintiff's due process and conditions of confinement claims are within the scope of Defendant's legitimate job description, therefore, the inquiry progresses to whether Plaintiff's constitutional rights were violated.

Step two is also met as Plaintiff has sufficiently alleged violations of his due process and Eighth Amendment rights. Thus, the only inquiry remaining is whether the laws with respect to

17

those rights were clearly established.

Clearly established law must provide a defendant with "fair warning" that his or her conduct deprived the plaintiff of a constitutional right. *Hope v. Pelzer*, 536 U.S. 730, 739–41 (2002). A plaintiff "can demonstrate that the contours of the right were clearly established in several ways." *Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012). First, a plaintiff can show that "a materially similar case has already been decided." *Id.* (internal quotations and citations omitted). Second, a plaintiff can point to a "broader, clearly established principle [that] should control the novel facts [of the] situation." *Id.* (internal quotations and citation omitted). "Finally, the conduct involved in the case may 'so obviously violate[ ] th[e] constitution that prior case law is unnecessary.'" *Id.* (internal citations omitted). Clearly established precedent in this Circuit means decisions of the United States Supreme Court, the Eleventh Circuit Court of Appeals, and the highest court of the pertinent state. See *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007).

Both the protected liberty interest and level of due process rights due to Plaintiff are clearly established federal law. See *Sandin*, 515 U.S. 472; *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445 (1985); *Wilkinson*, 545 U.S. 209, 223 (2005); *Wallace*, 229 F. App'x 827. The right to be free from cruel and unusual punishment as alleged by Plaintiff and provided by the Eighth Amendment is also clearly established federal law. See *Brooks v. Warden*, 800 F.3d 1295, 1306 (11th Cir. 2015) ("Eighth Amendment violations can arise from "conditions lacking basic sanitation"). Accordingly, Defendants' Motions to Dismiss on the basis of qualified immunity should be denied.

**B.   Plaintiff's requests for Injunctive Relief are "narrowly drawn."**

Defendants argue that Plaintiff's request for injunctive relief should be dismissed because

it is not "narrowly drawn." Doc. 14-1, pp. 18-19. The PLRA requires that Courts "narrowly tailor" remedies in order to correct the specific violations of the rights of particular plaintiffs. *See* 18 U.S.C. § 3626(a)(1). Nevertheless, federal courts "may not allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration." *Brown v. Plata*, 131 S. Ct. 1910, 1929 (2011). At this stage of the case, it is too early to determine whether or not injunctive relief might be authorized. Given the opaque decision-making process alleged, it may be possible to fashion an injunctive remedy that would be narrowly tailored to the goal of creating a more meaningful and transparent review process.

## C.    Plaintiff is not entitled to Monetary Relief Under the PLRA

Plaintiff's requests for damages are listed in the last several pages of his amended complaint. *See* Doc. 55, pp. 16-18. In his proposed amended complaint, Plaintiff requests:

Compensatory damages in the following amounts:

$200,500 jointly and severely against Defendants […] for the punishment, mental, emotional, and physical injury resulting from their denial of Due Process in connection with the Plaintiff's classification hearings. By this demand, Plaintiff seeks compensatory damages for the loss of privileges and quality of life in his prison living conditions, and loss of the limited liberty enjoyed by prisoners, resulting from his segregated confinement, in that he was confined for 23 hours a day in modernized dungeon cell and deprived of most of his personal property as well as the ability to work, attend educational, rehabilitative, and vocational programs, watch television, associate with other prisoners, attend outdoor recreation in a congregate setting with the ability to engage in sport and other congregate recreational activities, attend meals with other prisoners, attend religious service, contact visits, and physical access to law library.

$100,000 jointly and severely against Defendants Logan and McMillian for their deliberate reckless disregard for Plaintiff's due process of law rights and for physical injuries, mental and emotional distress resulting from prolonged confinement in SMU.

Doc. 55, pp. 16-17. Plaintiff also requests punitive and nominal damages against all Defendants.

See *id*. at 17. Defendants argue these requests are not available to Plaintiff.

The PLRA was intended "to reduce the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints." *Napier v. Preslicka*, 314 F.3d 528, 531 (11th Cir. 2002). To effectuate this purpose, Congress placed various restrictions on the ability of prisoners to seek judicial relief and the form such relief may take. Included among these restrictions is 42 U.S.C. § 1997e(e), the statutory provision at issue here. Section 1997e(e) is entitled "Limitation on recovery" and provides in full: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

It is well settled that state officers acting in their official capacities are not "persons" under Section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, Plaintiff may not recover monetary damages from the Defendants, in their official capacity, under Section 1983. Plaintiff may seek damages from the Defendants, in their individual capacity, under Section 1983. As the Defendants note, however, the PLRA also limits the type of monetary relief available to Plaintiff. Specifically, Plaintiff may only potentially recover nominal damages based on his allegations of mental and emotional suffering (Doc. 55, p. 16-17), because (i) the PLRA requires a prior showing of physical injury, see 42 U.S.C. § 1997e(e); and because (ii) the record does not contain sufficient fact-based allegations suggesting that Plaintiff suffered from a "more than *de minimis*" injury.

In his Amended Complaint, Plaintiff requests "200,500 jointly and severely against Defendants […] for the punishment, mental, emotional, and *physical injury* resulting from their denial of Due Process in connection with Plaintiff's classification hearings." Doc. 55, p. 16. Plaintiff alleges the following conditions have resulted from his confinement in SMU: insomnia,

cardiovascular and genito-urinary problems, tremulousness, gastro-intestinal problems, deterioration of eyesight, heart palpitations, migraines, appetite loss, weight loss, back and joint pain, dizziness, hypersensitivity to external stimuli, chronic depression, hallucinations, anxiety, nervousness, night terrors, panic attacks, paranoia, and claustrophobia.

Section 1997e(e) does not define what constitutes a physical injury, but symptoms similar to Plaintiff's are generally not sufficient to satisfy Section 1997(e)'s physical injury requirement. See *Chatham v. Adcock*, 334 F. App'x 281 (11th Cir. 2009) (holding that a plaintiff's claims of anxiousness, nausea, nightmares, hallucinations and increase in blood pressure were not enough to satisfy the Section 1997e(e) physical injury requirement); *Williams v. Allen*, 2014 WL 2547804 at *1 (M.D.Ga June 5, 2014) (concluding that allegations of hunger and weight loss similar to those alleged by Plaintiff were de minimis ).[5] Accordingly, it is recommended that the Court **DISMISS** Plaintiff's claims for compensatory and punitive damages pursuant to 42 U.S.C. § 1997e(e). Plaintiff's requests for nominal damages should proceed.

## D.   Plaintiff is not entitled to an appointed Expert Witness to Determine Additional Injuries.

Plaintiff requests relief in the form of appointed expert witnesses "to determine additional irreparable injuries." Doc. 55, p. 17. Plaintiff appears to request this assistance due to his *in forma pauperis* status provided under 28 U.S.C. § 1915. Section 1915 does not address the costs of

---

[5]Other courts have made similar findings. See *Casey v. Brockley*, 2015 WL 8008728, at *51 (N.D.N.Y. Nov. 9, 2015), report and recommendation adopted, 2015 WL 7864161 (N.D.N.Y. Dec. 3, 2015) ("numerous courts have held-correctly, I believe-that physical manifestations of emotional injuries (e.g., anxiety, depression, stress, nausea, hyperventilation, headaches, insomnia, dizziness, appetite loss, weight loss, etc.) are not 'physical injuries' for purposes of the PLRA."); *Powell v. Harrison*, 2010 WL 331922, at *2 (S.D. Ga. Jan. 28, 2010) ("Though there is no set list for de minimis injuries, no court has ever found that hypertension by itself constitutes a physical injury rising above that standard."); *May v. Donneli*, 2009 WL 3049613, at *3 (N.D.N.Y. Sept. 18, 2009) ("Plaintiff's alleged increase in blood pressure does not amount to physical injury."); *Taylor v. Dupiechain*, 2009 WL 1490836, at *2 (W.D. La. May 26, 2009) (chest pain and elevated blood pressure did not constitute injuries sufficient to satisfy the 1997e(e) threshold); *Todd v. Graves*, 217 F. Supp. 2d 958, 960 (S.D. Iowa 2002) (elevated blood pressure, aggravated hypertension, dizziness, insomnia, and loss of appetite insufficient to withstand the operation of 42 U.S.C. § 1997e(e)).

discovery such as those incurred by hiring expert witnesses. Other courts in the Eleventh Circuit, however, have held that a party proceeding *in forma pauperis* is still responsible for bearing the costs of witness fees and mileage. See *Fernandez v. Kash N' Karry Food Stores, Inc.*, 136 F.R.D. 495, 496 (M.D. Fla. 1991), aff'd, 966 F.2d 1461 (11th Cir. 1992).

Further, "[n]either defendants nor the district court [are] obligated to advance [an inmate] his discovery costs." *Easley v. Dep't of Corr.*, 590 F. App'x 860, 868 (11th Cir. 2014) (citing *Tabron v. Grace*, 6 F.3d 147, 159 (3d Cir. 1993) ("There is no provision in [Section 1915] for the payment by the government of the costs of ... litigation expenses, and no other statute authorizes courts to commit federal monies for payment of the necessary expenses in a civil suit brought by an indigent litigant.")). In light of the foregoing and assuming that Plaintiff cannot afford to pay the costs of expert witnesses, this court finds that section 1915 does not prescribe that the government must pay for such costs. There are other avenues by which Plaintiff can conduct discovery as provided in the Federal Rules of Civil Procedure. Accordingly, Plaintiff's request should be denied.

## IV.    PLAINTIFF'S MOTION TO DISMISS HIS COMPLAINT

On April 29, 2016, Plaintiff filed a Motion to Dismiss to his complaint. Doc. 56. In the Motion, Plaintiff indicates he would dismiss his case, but "only" if the following conditions were met:

1.  The GDOC pay the remaining filing fee balance of $323.50;
2.  Plaintiff be "immediately transferred off the High Max Tier 3 Program; and not to no Tier 2 program. But straight back to general population either to: (a) Phillips State Prison; (b) Augusta State Prison, or (c) Telfair State prison;"
3.  Plaintiff's security level be dropped down to medium security; and
4.  The disciplinary infraction written by Officer Willis on October 15, 2015 be removed from his institutional record.

Doc. 56, p. 1. To date, Defendants have not responded to this Motion, and there is no indication

that the conditions set out above have been met.

The Federal Rules provide for voluntary dismissal of a case without a court order when the Plaintiff files either: "(i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or (ii) a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41 (a)(1)(A). As the motion is not a notice of dismissal, nor is it a stipulation signed by "all parties who have appeared," Plaintiff's motion does not conform to the requirements of Rule 41.

Instead, Plaintiff's motion could be construed as an Offer of Judgment, pursuant to Rule 68, but is still improper. Specifically, the rule provides that:

> At least 14 days before the date set for trial, a party *defending* against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment.

Fed. R. Civ. P. 68(a). Plaintiff's offer is improper, however as Plaintiff is not the defending party, and in any event, the Defendants have not responded. Further, the Motion appears to be moot, as Plaintiff concludes his motion by stating: "If no response is given at that time, I will continue to procced forward with my civil case." Doc. 56, p. 1. For all the above stated reasons, Plaintiff's motion must be **DENIED**.

## CONCLUSION

In accordance with the analysis above, it is **RECOMMENDED** that Defendants' Motions to Dismiss (Docs. 14, 30, 50; 64) be **GRANTED in PART**, such that Plaintiff's requests for compensatory and punitive damages be **DISMISSED**, and **DENIED in PART**, such that Plaintiff's claims for violations of his due process and Eighth Amendment rights go forward for factual development. It is **FURTHER RECOMMENDED** that Plaintiff's Motion to Dismiss (Doc. 56) be **DENIED**.

Pursuant to 28 U.S.C. 636(b)(1), the parties may serve and file written objections to the relevant portions of this **RECOMMENDATION** with the District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 6th day of July, 2016.


s/ Charles H. Weigle_____
Charles H. Weigle
United States Magistrate Judge